UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BRANDON H.,<br><br>   Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of the Social Security Administration,<br><br>   Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:22-cv-00779<br><br>Magistrate Judge Daphne A. Oberg |

  Plaintiff Brandon H.[1] brought this action for judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Mr. H.'s application determined he did not qualify as disabled.[3] Mr. H. argues the ALJ erred by failing to evaluate certain medical opinion evidence and, as a result, his decision is unsupported by substantial evidence.[4] Because the evidence at issue does not qualify as medical opinion evidence under the social security regulations, Mr. H. has demonstrated no error in the ALJ's treatment of it. The record shows the ALJ applied

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by his first name and last initial only.

[2] (*See* Compl., Doc. No. 5); *see also* 42 U.S.C. §§ 401–434.

[3] (Corrected Certified Tr. of Admin. R. ("Tr.") 12–22, Doc. No. 19.)

[4] (*See* Opening Br. 1, 14–16, Doc. No. 13.)

1

the correct legal standards, and his findings are supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 9.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotation marks omitted).

[9] *Id.* at 1154 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) he has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) he has the residual functional capacity to perform past relevant work; and
5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[15]

---

[11] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. H. applied for disability insurance benefits on August 19, 2020.[18] He previously worked as a bread maker (production-line worker) and as a nurse's aide.[19] After an administrative hearing,[20] the ALJ issued a decision on May 5, 2022, finding Mr. H. not disabled and denying benefits.[21] At step two of the sequential evaluation, the ALJ found Mr. H. had the severe impairments of "generalized anxiety disorder[,] autism spectrum disorder, major depressive disorder, posttraumatic stress disorder, attention deficit hyperactivity disorder and borderline intellectual functioning," and nonsevere impairments of gastroesophageal reflux disease, hypothyroidism, obesity, and back impairments.[22] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[23]

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 12.)

[19] (*See id.* at 20.)

[20] (*See id.* at 42–68.)

[21] (*Id.* at 12–22.)

[22] (*Id.* at 14–15.)

[23] (*Id.* at 15–16.)

The ALJ found Mr. H. had the residual functional capacity ("RFC")[24] to perform work at all exertional levels, with functional limitations.[25]  As relevant here, the ALJ found Mr. H. could:

> understand, carry out, and remember simple, and repetitive tasks involving only simple, work-related decisions . . . adapt to routine workplace changes and to deal with problems involving only a few concrete variables in or from standardized situations . . . [and] occasionally interact with supervisors, coworkers, and the public.[26]

After considering the testimony of a vocational expert, the ALJ found Mr. H. could perform his past work as a bread maker/production line worker as well as other jobs existing in significant numbers in the national economy.[27]  Therefore, the ALJ found Mr. H. not disabled and denied his claim.[28]

The Appeals Council denied Mr. H.'s request for review,[29] making the ALJ's decision final for purposes of judicial review.

---

[24] A claimant's RFC is the most he can do in a work setting considering his limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 1996 SSR LEXIS 5, at *5.  The ALJ considers all relevant medical and other evidence in the record.  *See* 20 C.F.R. § 404.1545(a)(3).

[25] (*See* Tr. 17–20.)

[26] (*Id.* at 17.)

[27] (*Id.* at 20–21.)

[28] (*Id.* at 21–22.)

[29] (*Id.* at 1–3.)

**ANALYSIS**

Mr. H. argues the ALJ erred by failing to evaluate medical opinion evidence from Elizabeth Albertsen, Psy.D.[30] Mr. H. contends this constitutes reversable error.[31] As explained below, Dr. Albertsen did not provide "medical opinions" as defined in the applicable social security regulations. Accordingly, the ALJ was not required to evaluate this evidence under the framework applicable to medical opinion evidence. The record shows the ALJ properly considered this evidence and applied the correct legal standards, and his RFC findings are supported by substantial evidence. The Commissioner's decision is affirmed.

A. <u>Legal Standards</u>

An ALJ is required to assess the persuasiveness of medical opinion evidence, including explaining how he considers the supportability and consistency of medical opinions.[32] However, agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated work-related abilities.[33] These include the claimant's ability to perform "physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions," and "mental demands of work activities, such as understanding; remembering;

---

[30] (*See* Opening Br. 14–16, Doc. No. 13.)

[31] (*Id.* at 14.)

[32] 20 C.F.R. § 404.1520c(b)(2), (c).

[33] *Id.* § 404.1513(a)(2).

maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."[34]

The regulations differentiate "medical opinions" from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both."[35]  And both categories are distinguished from "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[36]

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[37]  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[38]

  B.  <u>Evidence from Dr. Albertsen</u>

Elizabeth Albertsen, Psy.D, performed a neuropsychological assessment of Mr. H. on June 27, 2020 for purposes of determining whether he had autism.[39]  Dr. Albertsen conducted an interview and cognitive testing and found Mr. H. displayed

---

[34] *Id.* § 404.1513(a)(2)(i)–(ii).

[35] *Id.* § 404.1513(a)(1).

[36] *Id.* § 404.1513(a)(3).

[37] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[38] *Id.* at 1010.

[39] (Tr. 715–26.)

"cognitive abilities . . . in the [b]orderline range."[40]  "His strongest area was visual-spatial, or non-verbal intelligence," while his lowest performance was in working memory, which "tends to be the area most affected by ADHD [p]roblems."[41]  Mr. H. displayed verbal comprehension in the low-average range and processing speed in the borderline range.[42]  Dr. Albertsen also noted Mr. H. displayed traits consistent with individuals on the autism spectrum and that Mr. H. self-reported symptoms consistent with ADHD.[43]

The ALJ cited Dr. Albertsen's evaluation seven times in his decision, and he discussed the cognitive testing results in detail in the RFC analysis.[44]  But the ALJ did not evaluate the persuasiveness of the report under the framework applicable to medical opinion evidence.  Mr. H. contends this was error.

Contrary to Mr. H.'s argument, Dr. Albertsen's evaluation does not contain medical opinions as defined in agency regulations.  The cognitive testing results in Dr. Albertsen's report are objective medical evidence, not medical opinions.  Dr. Albertsen does not make any statement identifying any particular limitation in Mr. H.'s ability to perform work-related activities, nor does she address what Mr. H. could still do despite

---

[40] (*Id.* at 724.)

[41] (*Id.*)

[42] (*Id.* at 722.)

[43] (*Id.* at 722–24.)

[44] (*See id.* at 15–16, 18–19.)

his impairments.[45]  Dr. Albertsen's statements about working memory and processing speed that Mr. H. references[46] offer no more than a description of the testing she performed; they do not contain any opinions regarding particular, work-related, functional limitations or abilities.  Even to the limited extent Dr. Albertsen commented on the nature and severity of Mr. H.'s impairments, such statements are "other medical evidence," not medical opinions.[47]  Mr. H. does not identify any statement in Dr. Albertsen's report which would qualify as a medical opinion as defined in agency regulations.  Accordingly, the ALJ was not required to assess the persuasiveness of Dr. Albersen's report under the framework applicable to medical opinion evidence.

The record demonstrates the ALJ adequately considered Dr. Albertsen's evaluation in assessing Mr. H.'s RFC.  As noted above, the ALJ discussed and cited the report several times throughout his decision.[48]  The ALJ acknowledged Dr. Albertsen's clinical testing documented "borderline intellectual functioning," and noted reports of deficits in Mr. H's ability to communicate.[49]  Accordingly, when the ALJ determined Mr. H.'s RFC, the ALJ included a "limitation from working around others . . . limitation to simple, routine repetitive tasks, simple, work-related decisions, dealing with problems

---

[45] *Cf. Roy v. Comm'r, Soc. Sec. Admin.*, No. 22-5036, 2022 U.S. App. LEXIS 34770, at *9 (10th Cir. Dec. 16, 2022) (unpublished) (finding a medical source's statement did not qualify as a medical opinion where it did "not provide any particular manipulative limitations or address what [the claimant] could still do").

[46] (Opening Br. 15, Doc. No. 13.)

[47] *See* 20 C.F.R. § 404.1513(a).

[48] (*See* Tr. 15–16, 18–19 (citing Dr. Albertsen's report seven times (the report, at Tr. 715–26, is identified by the ALJ as exhibit 4F/113–124)).)

[49] (*Id.* at 18.)

9

involving only a few concrete variables in or from standardized situations and occasional interaction with supervisors, coworkers, and the public."[50]

In all, the record shows the ALJ adequately considered, and even relied on, Dr. Albertsen's evaluation in assessing Mr. H.'s RFC. Indeed, the ALJ included functional limitations related to concentration, attention, processing, and social interaction, in the RFC and offered a detailed explanation for his findings on this issue.[51] The ALJ's findings are supported by substantial evidence, including the medical records cited in the decision. It is not apparent the RFC assessment conflicts with Dr. Albertsen's evaluation, and Mr. H. does not explain what additional limitations should have been included based on Dr. Albertsen's report. Under these circumstances, Mr. H. has demonstrated no error in the ALJ's consideration of the evidence from Dr. Albertsen.

Because the ALJ properly considered medical evidence from Dr. Albertsen, and the RFC findings are supported by substantial evidence, the Commissioner's decision is affirmed.

DATED this 30th day of April, 2024.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[50] (*Id.*)

[51] (*See id.*)